### SMITH v. GILLEN.

Court of Appeals of Kentucky.

Jan. 25, 1952.

Wheeler & Marshall, Paducah, for appellant.

Albert Karnes, Paducah, for appellee.

SIMS, Justice.

Appellant, James P. Smith, sued appellee for $750 rent alleged to be due under a lease contract covering a storeroom in Paducah. The answer admitted the execution of the lease but averred the building was made "untenable" by a fire, and by counter-claim appellee sought to recover $41.66 for overpayment of rent. Manifestly, when appellee used the word "untenable" this was a typographical error and he intended to write "untenantable." A jury trial resulted in a verdict against appellant, and judgment was entered dismissing the petition and allowing recovery in the full amount of the counter-claim.

A reversal of the judgment is sought upon three grounds: (1) A verdict should have been directed in favor of appellant; (2) the verdict is flagrantly against the evidence; (3) the instructions are erroneous.

The lease contract is a short, informal instrument and we copy it in full with the exception of the signatures of the parties:
"8/20/7

"Geo. S. Gillen, having through arrangement made with V. L. Cooper adjusts the rent paid by Cooper in advance to Sept. 15th and the said Gillen hereby leases the premises 222 Ky. Av. for 3 years from 9/15/47 to 9/15/50 @ the same rental 125.00 per mo."

In September 1949 appellee, who was conducting the "Bear Sporting Goods Company" in the leased premises, moved his store to another location but continued to pay rent under the contract, although not occupying the leased storeroom. On November 5, 1949, a fire occurred in an apartment over a restaurant next to the empty storeroom and considerable damage by water was done to it and the adjoining restaurant, both pieces of property belonged to appellant. Appellee had paid his rent until November 15, 1949, and as appellant did not get the leased premises repaired until December 5th or 6th of that year, he credited appellee with a month's rent. It is the contention of the appellant that the storeroom was restored by December 5th or 6th to the condition it was in before the fire, while appellee insists that it was never made tenantable by appellant, and under KRS 383.-170 appellee was released from his contract because for his purpose the leased room was destroyed as a result of the fire.

The proof is in direct conflict as to whether or not appellant restored the room after the fire. He testified the only damage done the leased storeroom was a portion of the ceiling, which was wall-board, was ruined by water and he had it replaced and painted; that practically the only damage to the walls was a place where appellee had cut an opening and then plastered it up in a defective manner; that appellant had restored the room by December 5th or 6th to the condition it was in previous to the fire.

The evidence for appellee was to the effect that the ceiling has been repaired only where it fell; that the walls have been repaired and repapered "but the walls still bulge and they are still wet * * * and the ceiling is dripping water"; that the room had plate glass windows which were cracked "during the fire fighting" and they have never been repaired; that due to the type of merchandise appellee handles, this damp building would ruin his goods.

■■ Manifestly, appellant was not entitled to a directed verdict in view of the conflicting evidence as to whether the storeroom was restored to the condition it was in before the damage. The jury, on appellant's motion, viewed the leased premises and with reason it cannot be said the verdict is flagrantly against the evidence. Appellee testified the ceiling was dripping water on the day before the trial, June 7, 1950.

Appellant puts much reliance in Abrams v. Simon, 243 Ky. 773, 49 S.W.2d 1031. But there, under the terms of the lease, the duty of putting the building back in a tenantable condition was upon the tenant, while here the lease is silent on that question and KRS 383.170 relieves the tenant from that liability. In the instant case the building was rendered untenantable by an unforeseen casualty, and without appellee's fault or negligence, to such an extent as to destroy its utility for the purpose for which it was rented; and when appellant failed within a reasonable time after the casualty to restore the building to its former condition, appellee was relieved of the accruing rent. See the Abrams case.

The first paragraph of the second instruction told the jury that Gillen was not liable for the rent for the remainder of the term if the leased premises were destroyed by fire or other casualty without fault on his part, and if the jury believed the premises were destroyed by fire, "or resulting flooding from water used in extinguishing the fire, then the law is for the defendant." In the third paragraph of this second instruction the court said: "The word 'destroyed' as used in these instructions does not mean totally destroyed, but does mean where fire or other casualty injures the leased premises to such an extent as to render the leased premises *untenable* and not fit for occupancy for the purpose for which the lease was intended to permit occupation."

This quoted paragraph of the instruction is criticized by appellant because the court, like appellee in his answer, used the word "untenable" when he meant "untenantable." Patently, the court intended to write "untenantable" since "untenable" means "incapable of being held, maintained or defended," Webster's New International Dictionary, Second Edition, and is meaningless in the instruction.

■ We think the court correctly defined the word "destroyed." When enacting K.S. § 2297 (now KRS 383.170), wherein the tenant is relieved from his common law liability in the payment of rent for the remainder of his term where the building is destroyed by fire or other casualty without fault or neglect upon his part, the General Assembly did not intend that the building had to be completely destroyed before the tenant was released. All that is necessary to release the tenant is that the building be damaged to such an extent as to destroy its usefulness for the purpose for which he occupied it, and the landlord fail to repair the building within a reasonable time. Abrams v. Simon, 243 Ky. 773, 49 S.W.2d 1031; Sun Ins. Office v. Varble, 103 Ky. 758, 46 S.W. 486, 41 L. R.A. 792.

Much is said in the testimony, as well as in briefs, as to whether the restaurant and the leased premises were in one and the

same building or in two separate buildings, both of which were owned by appellant. However, we do not see this is of paramount importance in this case, since it is not denied the damages to the leased premises resulted from their being flooded in the attempt to extinguish the fire which originated over the restaurant. The fire and the resultant flooding of the leased storeroom is the gist of this action, regardless of whether the two storerooms were in one or in two separate buildings.

The judgment is affirmed.